## McWilliams v. Havely, et al.

(Decided May 7, 1926.)

### Appeal from Woodford Circuit Court.

1.  Wills—Granddaughters, Devised Future Absolute Fee in Half of Farm of Other, should that Other Die Without Leaving Living Issue, Held to Take "Executory Devise" or "Shifting Use" and Granddaughter, Devised Fee on Death of Life Tenant, Unless She Die Without Issue, Takes a Defeasible Remainder Fee.—Under will conveying life estate to daughter in half of farm devised, with remainder in such half to granddaughter, but, if she died without bodily issue, to another granddaughter and if latter died without bodily issue title to her half of farm to go to first granddaughter, latter obtained a defeasible remainder fee in half interest of life tenant, and the respective future interests of each granddaughter in the half of the other was an "executory devise" or "shifting use."

2.  Deeds—Wills.—Future interest taking effect as a fee in derogation of a defeasible fee devised or conveyed to the first taker, when created by will, is an "executory devise," and when created by deed is a "conditional limitation," and in either event is given effect as a shifting or "springing use."

3.  Wills—Devise to Daughter for Life, then to Granddaughter, and if She Died Without Bodily Issue to Another Granddaughter, Held to Refer to a Definite Failure of Issue.—Devise to daughter for life, and at her death to granddaughter, and in case of latter's death without bodily issue to revert to another granddaughter, refers to a definite failure.

4.  Assignments—Vendor and Purchaser—Deeds by Each of Two Executory Devisees of Undivided Half Interest in Land to the Other Vests Absolute Ownership of Half in Each, and Deed by Both Conveys a Perfect Title which Purchaser Under Contract May be Compelled to Take (Kentucky Statutes, Section 2341).—Where will created executory devises in granddaughters, taking future absolute fee in half of farm of other, should that other die without leaving living issue, deeds executed by each to the other merged the future interest in each vendee, making her the owner of the absolute fee in undivided one-half of property, and joint deed by both and their husbands conveyed a perfect title which purchaser, under Kentucky Statutes, section 2341, may be compelled to take.

5. Assignments—Validity of Executory Devise as Subject of Alienation and Conveyance of Future Interest so as to Vest it in Vendee Held Recognized by Statute (Kentucky Statutes, Section 2341).— Kentucky Statutes, section 2341, recognizes the validity of an executory devise as a proper subject matter of alienation, whether created by will or deed, and provides for conveyance of future interest in realty of all title of vendor, so as to vest it in vendee.

SMITH & REYNOLDS for appellant.

ALLEN, BOTTS & DUNCAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

This equity action was filed by appellees and plaintiffs below, Ethel Sea Carr Havely and Corinne Boone Veach and their respective husbands, in the Woodford circuit court against appellant and defendant below, Earnest McWilliams, purportedly under the Declaratory Judgment Act, but in reality it is an action to compel defendant to specifically perform a written contract for the sale to him by plaintiffs of a tract of land in Woodford county containing about 155 acres and to accept the deed of general warranty tendered to him by plaintiffs and to perform the obligations imposed by his contract to purchase. With the petition there was filed a general warranty deed executed by plaintiffs and their husbands with all the necessary allegations to entitle plaintiffs to a specific performance of their contract, and also an averment that defendant declined to accept the deed or to carry out his contract. There was also filed with the petition as a part of it a certified copy of the last will and testament of G. W. Sea, the grandfather of plaintiffs, executed by him on May 3, 1909, and duly probated in the Woodford county court after his death, which occurred before the happening of the transactions involved in the litigation, and there was also filed with the petition and made a part of it copies of two deeds; one by Ethel Sea Carr Havely to Corinne Boone Veach, conveying the former's future interest under the will of G. W. Sea to the latter in and to a one-half undivided interest in the tract of land; and the other one was executed by plaintiff, Corinne Boone Veach, to her co-plaintiff, Ethel Sea Carr Havely, conveying to the latter Corinne's same interest in the other half undivided interest to the same tract, and it was further averred that a proper in-

terpretation of the will, together with those two convey-
ances, perfected the title of each of the grantors in the
deed tendered to defendant in and to a one-half undivided
interest in the tract and that their joint warranty deed
to him, in which their husbands joined, conveyed the
absolute title to all of it.   Defendant filed his general
demurrer to the petition, which the court overruled, and
he declining to plead further, the cause was submitted
on the averments of the petition and exhibits followed
by a judgment ordering and directing him to accept plain-
tiffs' tendered deed and to perform the obligations of his
contract of purchase, to which he objected and excepted
and prosecutes this appeal.

The first and second clauses of the will of G. W. Sea,
who was the grandfather of the female plaintiffs, are:
"First, I give, devise and bequeath to my daughter
Mattie the house and lot in the town of Versailles upon
which she now resides and at her death it is to go to her
daughter Ethel Sea Carr and in case of her death with-
out bodily issue it is to revert to my other granddaughter
Corinne Boone.

"Second, I give my farm near Mortonville to my
daughter Mattie and my granddaughter Corinne, equal
shares each to share equally the proceeds therefrom and
to bear equally the expense of keeping it till sold and
when sold the proceeds to be equally divided between
them.   Mattie to have twenty-five hundred dollars
($2,500.00) absolutely and independent of her husband
and Corinne one thousand dollars ($1,000.00) absolutely
and the residue of Corinne's part to reinvest in real
estate for her benefit and in case she die without bodily
issue the property so purchased should revert to my
other granddaughter Ethel Sea Carr and the residue of
the proceeds of the farm falling to Mattie to be also re-
invested in real estate and the same restrictions placed
upon this as upon house and lot in Versailles."

The property referred to in the first clause of the
will is not involved in this controversy and that clause is
inserted only because the devolution of half the farm,
referred to in the second clause and involved in this liti-
gation, is in certain contingencies governed by its pro-
visions.   The farm here involved and which is devised
by the second clause of the will was devised to testator's
daughter, who was the mother of plaintiff, Ethel Sea
Carr Havely, and to the other female plaintiff, Corinne
Boone Veach, in equal shares jointly, but if Corinne died

without bodily issue her half would then "revert to my other granddaughter, Ethel Sea Carr (Havely)." It was also provided in that clause that the other half of the farm devised should have "the same restrictions placed upon this (it) as upon house and lot in Versailles," which, as we have seen, was the property devised in the first clause of the will; and when we turn to it we find the devoluting line to be "and at her (Mattie, testator's daughter) death it is to go to her daughter, Ethel Sea Carr Havely, and in case of her death without bodily issue it is to revert to my other granddaughter, Corinne Boone." Construing the two clauses together it was plainly provided in the will, in substance, that testator's daughter, Mattie, was given a life estate for her own life in half of the farm devised by the second clause with remainder in that half to Mattie's daughter, the plaintiff Ethel Sea Carr Havely, but if she died without bodily issue, then the plaintiff, Corinne Boone Veach (according to the first clause of the will) would take the title to that half. Likewise if Corinne Boone Veach died without bodily issue then the title to her half of the farm devised by the second clause of the will would shift to plaintiff, Ethel Sea Carr Havely. The only technical *remainder* interest in the farm devised by the will was the defeasible remainder fee to Ethel Sea Carr Havely of the half undivided interest in the farm in which her mother was given a life estate. The language which rendered that remainder interest defeasible was the provision that if she died without bodily issue then it would go to Corinne Boone (Veach). The future interest that the latter took under the will in that half was not a *remainder* but was an *executory devise,* or shifting use, and, likewise, the future interest that Ethel Sea Carr Havely took in the other one-half of the farm that was devised to Corinne was the same character of interest, since Corinne's half of that farm was, under the terms of the will, only a defeasible fee dependent upon its becoming absolute on her dying survived by living issue. Therefore, each of the plaintiffs took only a defeasible fee in the respective halves of the farm, since each of them was devised the future absolute fee in the half of the other should that other die without leaving living issue. Their respective future interest in the halves of the other was not, therefore, a technical common law remainder interest, but was an estate created by what the law has de-

signated as an "executory devise," or shifting use by means of which a future fee could be created in derogation of a prior defeasible one in the first taker.

Some confusion has arisen in the opinions of courts, and which we have not escaped, in failing to distinguish a technical common law *remainder,* which must be supported by a prior particular estate, and a future interest taking effect as a fee in derogation of a defeasible fee devised or conveyed to the first taker. When the latter character of future interest is created by a *will* it is known in the law as an "executory devise," and when it is created by a deed it is commonly designated as a "conditional limitation," and in either event it is given effect as a "shifting or springing use."

The doctrine as stated is now firmly established in the law with no court holding to the contrary, unless otherwise governed by some statutory provision. In 11 R. C. L., under the separate title of "Executory Interests," page 466, paragraph 1, in stating the doctrine above outlined, the text says: "Executory interests, strictly speaking, are such future estates or interests in lands as could not be created directly by a conveyance at common law, but only by executory devises in wills, or by conveyances to uses by creating shifting and springing uses in deeds. Estates of this description arise, when their time comes, of their own inherent strength, and when properly created do not depend for protection on any prior estate, in which respect they differ from remainders. As applied to land, an executory devise is such a limitation of a future estate or interest in lands as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law. The original purpose of such devises was to carry into effect the will of the testator, and give effect to limitations over, which could not operate as contingent remainders by the rule of the common law." On the following page, in paragraph 2, in pointing out more minutely the distinction between a technical remainder and a springing or shifting future use the text says: "In addition to the different mode of creation, an executory limitation differs from a remainder in that it needs no particular prior estate to support it; in that a fee simple or other less estate may be limited by it after a fee simple; and in that a contingent remainder may be barred or destroyed by several means, whereas an execu-

tory limitation cannot be prevented from taking effect when the contingency happens, either by fine or recovery, or by any alteration of the estate after which it is limited." Further pointing out the distinction, and as furnishing the history of the creation of such future interests both by will and by deed, the text of the same volume on page 470, paragraph 8, says: "The common law did not allow a remainder or other legal estate to be limited after a fee. The rule was founded on the postulate that a conveyance of a fee was a conveyance of the whole estate, and that nothing was left on which the limitation over could operate. On the assumption that a fee given in the first instance carried the entire and absolute interest in the land to the grantee, the common law rule that there could be no further limitation was logical and consistent, because where the whole is given there can be nothing beyond that left to give. But under the statute of uses, and indeed before they were legalized by that statute, a species of limitations known as shifting or springing uses had been recognized, which permitted ulterior estates to be created to arise on the defeasance of prior estates in the same property, contrary to the strict rules of the common law. So the courts after the passage of the statute of wills (32 Hen. VIII.), following the analogies furnished in conveyances to uses, and in support of the intention of the testator, gradually came to recognize the validity of limitations in devises not permitted in conveyances at common law, and it has for a long time been well settled both in England and in this country that a fee may be limited after a fee by a conveyance operating under the statute of uses, or by way of executory devise, provided the contingency operating to defeat the estate of the first taker be not violative of the rule against perpetuities." On the following page, in paragraph 9, in enumerating the contingencies on which such conveyances over may be created it is said: "A common contingency on which an estate in fee is thus to be defeasible and the estate is to go to another is the failure of issue of the first taker, and an executory limitation of this nature is valid where it contemplates the failure of issue during the life of the first taker and not an indefinite failure of issue;" for if the latter was contemplated the rule against perpetuities would be violated.

On page 481, in paragraph 19, of the same volume the difference between a *definite* and an *indefinite* failure

of issue is pointed out in this language: "A definite failure of issue is where a precise time is fixed for the failure of issue, not in express terms, but inferable with reference to any particular time or event, as in the case of a devise to a designated person, but if he die without lawful issue living at the time of his death, then over." That language is then followed in the text by a definition of indefinite failure of issue, but with which we are not concerned in this case, since the failure of issue in this case upon which the future springing uses and estates created by testator's will in the two female plantiffs took effect was and is a *definite* failure of issue under the definition *supra,* and which is also supported by Mr. Bouvier in the definition given by him in his law dictionary. The same doctrine and principle of law is fully set forth in the text in 40 Cyc., pages 1589-1592, and it finds unqualified support in all the standard text writers on the subjects of real estate, conveyances and wills, including the text in Blackstone, volume 2, page 172; and also by our numerous opinions wherein we have upheld future estates limited after the defeat of a defeasible fee in the first taker, some of the latest of which are: Murphy v. Murphy, 182 Ky. 731; Fulton v. Fulton, 183 Ky. 385; Barret v. Percival, 197 Ky. 88, and Ewering v. Ewering, 199 Ky. 450. In each of those cases the future interest made to take effect upon the defeat of a prior defeasible fee was recognized as valid, and the estate thereby created was either an executory devise or a conditional limitation, dependent upon the instrument creating it.

It is, then, therefore, clear that the failure of issue as employed by the testator in this case related to a definite time for such failure, which was the death of the first taker (Atkinson v. Kern, 210 Ky. 824), and that the respective future estates devised to the two female plaintiffs were valid ones as executory devises. If, therefore, such an interest is a proper subject of conveyance by the devisee so as to legally vest in the vendee all of the rights, title, and interest in such future estate possessed by the vendor, then the two deeds executed by the plaintiffs and their husbands merged such future interest in each vendee and made her the owner of the absolute fee in an undivided one-half of the property involved, and the deed jointly executed by them and their husbands and tendered to defendant conveyed a perfect title which he should have accepted.

It should be remembered that we are not dealing here with the question as to the right of a *contingent* remainderman to convey his interest and absolutely relieve it of the contingency, as was the question involved in the case of Roy v. West, 196 Ky. 96. On the contrary, as we have seen, the subject of the respective conveyances from the plaintiffs to each other was an executory devise and not a contingent remainder; and those executory devises were themselves absolute, neither being followed by the creation of another future use upon any contingency whatever. The text in the publications, *supra,* lays down the rule broadly that such future interest is alienable and a conveyance of it transfers to the vendee all the title of the vendor. However, section 2341 of our present statutes says: "Any interest in or claim to real estate may be disposed of by deed or will in writing. Any estate may be made to commence in future by deed, in like manner as by will, and any estate which would go as any executory devise or bequest, shall be good if created by deed." That section not only expressly provides for a valid conveyance of a future interest in real estate of all the title of the vendor so as to vest it in the vendee, but it also expressly recognizes the validity of an executory devise as being a proper subject matter of such an alienation. It also recognizes the existence of such future estates created either by will or by deed, and the cases in the notes to that section, as well as those *supra,* enforced the statute as written.

That the future interest of the respective plaintiffs in and to the other half of the land in controversy became merged upon the execution of her deed to the other one with the latter's present interest and made her title an absolute one, there can be no question, and it was so held in the case of Larmon v. Larmon, 173 Ky. 477. It is, therefore, plain that the court did not err in holding that the joint deed of the female plaintiffs and their husbands which they tendered to defendant conveyed him the absolute title to the land in controversy, and in adjudging that he should accept it and perform his contract of purchase according to its obligations.

Wherefore, the judgment is affirmed.