PYNE v. PYNE.

No. 8999.

United States Court of Appeals
District of Columbia.

Argued Dec. 13, 1945.

Decided March 4, 1946.

298

Mr. John J. Wilson, of Washington, D. C., for appellant.

Mr. E. Hilton Jackson, of Washington, D. C., with whom Mr. John W. Jackson, of Washington, D. C., was on the brief, for appellee.

Before EDGERTON, CLARK, and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

The trustee under the will of Elizabeth A. Pyne, deceased, filed its petition in the District Court for instructions as to the distribution of a trust fund. Answers were filed and, upon motion, judgment was entered upon the pleadings. From that decree the guardian ad litem of an infant defendant appeals.

The question arises upon the Fourth paragraph of Mrs. Pyne's will. The persons whose names appear in the proceeding are relatives of the testatrix as follows: her sister, Caroline L. Frailey; her daughter, Caroline C. F. Pyne; her three sons, John, Charles L. and Henry R. Pyne; her grandson, John Pyne, Jr., and her great granddaughter, Jennifer Pyne.

The Fourth paragraph of the will is:

"Fourth. I give, devise and bequeath to my sister Caroline L. Frailey all my right, title and interest in house and lot numbered 1315 New York Avenue, in the city of Washington, District of Columbia, known as lot numbered three (3), in Square numbered two hundred and fifty-one (251), in said city and District, for and during her natural life; and after her death, or in case she die before me, I give, devise and bequeath the same to my daughter Caroline C. F. Pyne, for and during her natural life; and after her death, I give, devise and bequeath all my right, title and interest in the aforesaid land and premises to my three other children, John Pyne, Charles L. Pyne, and Henry R. Pyne, and the issue of my said daughter, if she leave any surviving her, in fee simple, said issue to take a one-fourth (¼) part; and if my said daughter die without issue, then I give and devise the same to my three children aforesaid, John Pyne, Charles L. Pyne, and Henry R. Pyne, their heirs and assigns forever, share and share alike. And in any case, if any one of my said three children, John Pyne, Charles L. Pyne, and Henry R. Pyne, should die leaving a descendant or descendants, said descendant or descendants to take the share his, her or their parent would have taken had he lived."

The will was executed in 1897. In 1905 the testatrix died. In July, 1914, Caroline L. Frailey died. In November, 1914, John Pyne assigned all his right, title and interest in the estate to his brother, Henry, for one dollar and other valuable considerations. In 1935 John Pyne died. In 1943 John Pyne, Jr., died, leaving a daughter, Jennifer. In 1944 Caroline C. F. Pyne died without issue.

Jennifer Pyne, appellant by her guardian ad litem, is the sole descendant of John Pyne.

The trustee asked the District Court for instructions as to the distribution of funds which are the proceeds of the sale of the real estate devised in the paragraph above quoted. The ultimate question is which of two persons takes the share of John Pyne: his assignee, Henry, or his descendant, Jennifer. The answer depends upon whether John Pyne's interest was absolute or was defeasible.

 Caroline Pyne had a life estate. John, Charles and Henry had remainders. The remainders in one-fourth of the prop-

erty to each of them were vested.[1] The remainders in the other one-fourth (i.e., one-twelfth to each son) were contingent, dependent upon Caroline Pyne's death with or without issue.[2] Whether vested or contingent, John Pyne's interests were assignable,[3] but he could assign only that which he had.[4] If his vested interest was defeasible, his assignment was subject to the same defeasance, and likewise his assignment of his contingent interest was subject to the conditions upon which he had the interest.

The difficulty arises because of the last sentence of the pertinent paragraph of the will, which reads as above-quoted except that we now italicize the key phrases, *"And in any case, if* any one of my said three children, *John Pyne,* Charles L. Pyne, and Henry R. Pyne, *should die leaving a descendant* or descendants, said descendant or descendants to take the share his, her or their parent would have taken *had he lived."*

In the provisions of the Fourth paragraph which precede this last sentence, the testatrix unmistakably devised the fee. She used the words "in fee simple" and "their heirs and assigns forever," which are distinctive descriptions of fee conveyance. In those provisions no qualification appears as to the remainders in three-fourths of the property, and the remainders in the other fourth are upon the contingency of issue vel non of Caroline Pyne. So that, if the testatrix had not added the final sentence, the vested remainders would have been absolute, and the contingent remainders would have been certain in point of ownership in the three sons. But the last sentence in the paragraph was added. That it was not an inadvertence or mere tautology is clear from the fact that in devising other property in the Second paragraph in her will,[5] the testatrix devised in fee simple absolute and added no sentence such as this last one in the Fourth paragraph. The sentence must have had some purpose and must be given meaning in accordance with its intent.

The language to be construed is the language of contingency. It is "if any one of my said three children should die leaving a descendant". Thus, an event which might or might not have happened is described, and upon that event, if it happened, another devisee was to take in place of the first-named devisee. But the *time* when that event must occur in order to have that result is not specified. The key to the problem in the case is the time as of which the last sentence in the Fourth paragraph of the will speaks.

There are four possibilities of time, (1) the death of the remainderman before the death of the testatrix; (2) the death of the remainderman during the lifetime of the life tenant; (3) the death of the remainderman at any time, and (4) the death of the last descendant of the remainderman, i.e., the final extinction of his line.

Variations of provisions in wills relating to the death of legatees or devisees without specification of time have led to much confusion and uncertainty in the authorities.[6] Generally speaking, the variations are classed in four groups, (1) where there is a devise to A and if A should die, then to B; (2) a devise to A and if A should die without issue (or with issue surviving), then to B; (3) a life estate to X with remainder to A, and if A should die, then to B; (4) a life estate to X, a remainder to A, and if A die without issue (or with

---

[1] D.C.Code 1940, § 45—812. "A future estate is vested when there is a person in being who would have an immediate right to the possession of the land upon the expiration of the intermediate or precedent estate, or upon the arrival of a certain period or event when it is to commence in possession. It is contingent when the person to whom or the event upon which it is limited to take effect in possession or become a vested estate is uncertain."

[2] See note 1 supra.

[3] D.C.Code 1940, § 45—101.

[4] D.C.Code 1940, §§ 45—814 and 45—815; McWilliams v. Havely, 1926, 214 Ky. 320, 283 S.W. 103; Thornton v. Louch, 1921, 297 Ill. 204, 130 N.E. 467.

[5] "Second. I give, devise and bequeath to my four children, John Pyne, Caroline C. F. Pyne, Charles L. Pyne, and Henry R. Pyne, all my right, title and interest in house and lot numbered 1702 S street, northwest, in the city of Washington, District of Columbia, known and distinguished as lot numbered thirty-two (32) in Stephen B. Priest's subdivision of certain lots in Square numbered one hundred and fifty-four (154), in the said city and District; to them, their heirs and assigns forever, share and share alike."

[6] Clagett v. Bowie, 1917, 130 Md. 437, 100 A. 635; Notes (1937) 109 A.L.R. 5 et seq.; Warren, Gifts over on Death Without Issue (1930) 39 Yale L.J. 332; Galaty, Death Provision in Will (1940) 5 John Marshall L.Q. 382.

issue surviving), then to B. It is unnecessary that we venture into the field of controversy about the effect of the first three of these types of provision, because we have before us one of the fourth type.

The first possibility is that the time to which the sentence in the present case refers is the death of the remainderman before the death of the testatrix. She might have had in mind the possibility that one of her sons would die before she did, and thus have meant that in such event the descendant, if any, of such son should take his share. If such be the meaning, then, upon the death of the testatrix with the three sons living, the possibility of substitution of devisee expired, and the remainders thereupon became absolute. Such, in effect, is the contention of the appellee-assignee.

The second possibility is that the sentence before us refers to the death of the sons, leaving descendants, at any time before the death of the life tenant. If that be the meaning, then upon the death of the testatrix each son took a vested remainder in fee subject to being divested if he should die, leaving a descendant, before the death of his sister, Caroline. Such, in effect, is the contention of appellant-descendant.

The third possibility is that the sentence before us refers to the death of the sons, leaving descendants, at any time. If such be the meaning, then the nature of the interest of each son must await his death for determination, because, if he should die without issue, his interest would be a remainder in fee simple absolute, but if he left issue surviving, his interest would be a life estate only. Grave questions are raised by such a construction, into which, however, we need not go in this case because remainderman John Pyne died leaving issue and his descendant would take under this construction as she would under the second possibility of construction above discussed. The case at bar, therefore, does not depend upon any distinction between the second and third possible constructions.

The fourth possibility is that the critical sentence refers to the final extinction of the descendants of any son. At the common law, when estates tail were favored, this last possibility would have been of importance. But fee tail estates were abolished in this jurisdiction long ago,[7] and words purporting to convey them are to be construed as conveying in fee simple. So, in the present case, if the last sentence in paragraph Fourth be given this meaning, John Pyne would have taken, by it, a fee simple absolute; and thus the sentence would have no meaning whatever, coming, as it does, after expressions already devising the fee. Under this construction, the appellee would be sustained, because, by it, the controversial sentence would, in effect, be stricken from the will.

 The basic, always controlling, rule in the construction of wills is the intent of the testator. If that intent can be discerned in the language of the will, read, of course, in the light of the surrounding circumstances, there is an end to the matter. If it cannot be so discerned, the testator must be presumed to have intended the result which the law has theretofore attached to the language which he chose to use.

In the case at bar, the intention of the testatrix in the controversial sentence is not indubitably certain, but there are signs which are helpful. In the first place, in this same Fourth paragraph, in providing for the life estate of Caroline Pyne in succession to or in substitution for the life estate of Caroline Frailey, the testatrix used the term "or in case she die before me". It is reasonable to assume that if she had meant to restrict the substitution provided by the last sentence of the paragraph to the death of her sons before her own death, she would have used the words with which she was obviously acquainted and had just used. In the second place, as we have pointed out, in the Second paragraph of the will[8] she devised other real estate to her four children, their heirs and assigns forever, share and share alike, and stopped there. It is a reasonable assumption that if, as she wrote her will, she had in mind the possibility of the death of any of her children prior to her own death, and desired to provide for that contingency, she would have provided for it in the Second paragraph as well as in the Fourth. Or,

---

[7] Estates tail general were abolished in Maryland by an act of 1786, c. 45, and this act was in force in the District of Columbia, Act of Feb. 27, 1801, 2 Stat. 103, c. 15, § 1, until a local statute was passed March 3, 1901, D.C.Code 1940, § 45—802. Dengel v. Brown, 1893, 1 App. D.C. 423.

[8] See note 5 supra.

viewing the two paragraphs together from another viewpoint, it appears that when this testatrix made a direct devise to her children, she provided no substitute devisee, but when she interposed a life estate, she specified a substitute, and the fact of this difference indicates that the substitution in the latter provision was coupled with the idea of the life estate, and was intended to be effective throughout the term of that estate. In the next place, we note that in the sentence preceding the last, the testatrix provided that if Caroline Pyne should die leaving issue, each son should take one-fourth, but if Caroline Pyne should die without issue, each son should take one-third. Then she proceeds, "And in any case," etc. It is a reasonable inference that by the expression "And in any case," she meant to refer to the immediately preceding possibility that each son might take one-fourth or might take one-third. If such was her intent, the last sentence clearly relates to the death of a son at any time prior to the death of Caroline Pyne.

If these indicia of intent within the will be not conclusive, we must ascertain the meaning which the law attaches to the provision in controversy.

The only cases in which we find the authorities in agreement in fixing the lifetime of the testator as the time of the effectiveness of a clause relating to the death of a devisee, are those in which the devise is directly to A and if A die (or should A die), then to B. There no contingency is stated, and no life estate intervenes. The clause is construed, for many reasons, to mean that the descendant is designated as an alternate, or substituted, devisee in the event that A should die before the will takes effect. Only one other construction of such a provision is possible, and that is that the descendant should take whenever A should die. The effect of such a construction would be to give A a life estate only, and where words conveying a fee, without contingency, are first stated, the law will not permit later indefinite language to reduce that estate. So, where no life estate intervenes and no contingency is added to the possibility of death, the construction of a sentence naming an alternate devisee is simple.

When a contingency is added to the reference to the death of the devisee—as "Blackacre to A and if he die without issue, to B"—a different situation is presented, because, whereas "if A dies" is not a contingency, "if A dies without issue" is a contingency. At common law the latter clause was held to refer to the indefinite failure of issue of A at any time, i.e., the running out of his line. That rule was changed by the Statute of Wills in 1838.[9] Under that statute, failure of issue is to be construed as referring to the death of the named devisee. When a life estate intervenes, an additional consideration is introduced, because another possibility of time is involved, the death of the life tenant. At first the English courts held, in Edwards v. Edwards, 1852, 15 Beav. 357, 21 L.J., Ch., 324, that death of a remainderman refers to his death during the life of the life tenant, whether or not the contingency "without issue" is stated, but later the House of Lords overruled that case [10] and held that reference to the death of a remainderman refers to his death at any time. 3 Jarman on Wills (7th ed. 1930) 2083 et seq., 2102 et seq. The learned authors of the later editions of Jarman's work on Wills, id., at 2102-3, point out that although the rule has been settled in England by the last-named case, almost any context evidencing an intention of the testator that the alternative designation is to be ineffective upon the first estate vesting in possession, is sufficient to lift the case from the general rule. In the case at bar, as we have already said, we need not go into that basic dispute, because either of those two rules sustains appellant here.

In this country the cases are somewhat in confusion, but the great weight of authority supports the rule that, absent a statute, where a will refers to the death of a remainderman survived by issue, without specification as to time, his death prior to the death of the life tenant is meant.

Maryland cases will serve by way of example of the state of the cases in the courts. The Court of Appeals of Maryland said, in 1917,[11] that there are cases in its reports in which limitations over in the event of death of the first devisee without issue have been held to refer to such a contingency in the lifetime of the testator,

---

[9] A similar statute was passed in this jurisdiction effective as to wills executed after March 3, 1901. D.C.Code 1940, § 45—205. It is not applicable to the will in the present case, executed in 1897.

[10] O'Mahoney v. Burdett, 1874, L.R. 7 H.L. 388.

[11] Clagett v. Bowie, supra, note 6.

other cases to the event whenever it might occur, and still other cases to the event if prior to the end of a preceding life estate, and that the different conclusions were due to the varying terms and context of the wills presented for interpretation. But we find that in the four cases cited by the court as holding the death of the testator to be the pivotal date,[12] the devise was direct in the first case and, in two, was in part direct and in part a remainder, with the clause referring to death relating to both interests; the fourth case was reported only in Memorandum. In the first case, the court applied the rule usually applicable where no life estate intervenes, and in the second and third cases, the court found the intent of the testator in the fact that both direct devise and remainder were treated alike. Running through the Maryland cases, we find the doctrine that where a life estate, or a term of years, intervenes, references to substitution in the event of the death of the remainderman without issue, or with issue surviving, are construed to refer to the period prior to the death of the life tenant. The rule was stated by Chief Judge Alvey in Engel v. State, to Use of Geiger, 1886, 65 Md. 539, 5 A. 249, 251, as follows:

"As a general rule, it is certainly true that in the case of an immediate gift, with a bequest over in the event of the death of the first or preceding legatee, the event of death is referable to the life-time of the testator. But it is explicitly laid down as text law that this construction is only made ex necessitate rei, from the absence of any other period to which the words denoting the event of death can be referred. Consequently, where there is another point of time to which such dying may be referred, as in the case where the bequest is to take effect in possession after a life-estate, or at any period subsequent to the testator's death, the words may be considered as extending to the event of the legatee dying in the interval between the testator's death and the period of vesting in possession, or the time of actual distribution, as will best promote the intention of the testator, to be gathered from the context of the will. 3 Jarm. Wills, 611."

The rule thus stated has repeatedly been applied. See Booth v. Eberly, 1914, 124 Md. 22, 91 A. 767, and cases there cited.

In Illinois, for another example, the cases upon the point apparently represent a transition in thought.[13] Lately the Illinois Supreme Court has defined the rule [14] and holds,

"(3) There is another class of cases where the devise is not immediate but is of a future interest to take effect in possession upon a termination of an intervening particular estate. In such case, unless the will shows the testator intended to refer to a different date than the termination of the particular estate, the rule is that the gift over will take effect if the contingency happens at any time before the termination of the particular estate, and death without issue means death without issue before the termination of the particular estate."

The Circuit Court of Appeals for the Sixth Circuit recently [15] considered a will in which a remainder in fee was devised, with an additional clause providing a substitute in the event of the death of the remainderman. The court could not ascertain the intent of the testator from his language and, therefore, ascertained and applied the prevailing rule of law. After referring to a case relied on by appellants, the court said:

"In that case, there was no intervening life interest, as in the case at bar, a fact generally conceded great importance in ascertaining the testator's intention. Some courts have construed provisions for gifts over if the first taker die without children to mean death without children during the life of the testator. Moore v. Cook, 153 Ga. 840, 113 S.E. 526; Tarbell v. Smith, 125 Iowa 388, 101 N.W. 118; Taylor v. Stephens, 165 Ind. 200, 74 N.E. 980; Davis v. Davis, 107 Neb. 70, 185 N.W. 442; Stokes v. Weston, 142 N.Y. 433, 37 N.E.

---

[12] Duering v. Brill, 1915, 127 Md. 104, 96 A. 269; Lumpkin v. Lumpkin, 1908, 108 Md. 470, 70 A. 238, 25 L.R.A.,N.S., 1063; Godwin v. Kemp, 1916, 129 Md. 159, 98 A. 495; Maryland Realty Corp. v. Mitchell, 1916, 128 Md. 698, 98 A. 1083.

[13] Compare Summers v. Smith, 1889, 127 Ill. 645, 21 N.E. 191; Kleinhans v. Kleinhans, 1912, 253 Ill. 620, 97 N. E. 1077, with Lachenmyer v. Gehlbach, 1914, 266 Ill. 11, 107 N.E. 202; Sheley v. Sheley, 1916, 272 Ill. 95, 111 N.E. 591; Welch v. Crowe, 1917, 278 Ill. 244, 115 N.E. 859; and Johnson v. Boland, 1931, 343 Ill. 552, 175 N.E. 794; see Galaty, supra, note 6.

[14] Smith v. Shepard, 1939, 370 Ill. 491, 19 N.E.2d 368, 371.

[15] Orendorf v. Fayette Farms, 6 Cir., 1939, 112 F.2d 149, 150, certiorari denied 1940, 310 U.S. 628, 60 S.Ct. 976, 84 L.Ed. 1399.

515; In re Vance's Estate, 209 Pa. 561, 58 A. 1063. See 2 Simes on Future Interests, § 330. It has been pointed out, however, that such construction may not accord with the testator's intent, since changes made desirable by events that occur before his death can be provided for in a new will. 2 Simes on Future Interests, supra, § 330. If no life estate intervenes, the only other view possible is that childlessness when the beneficiary dies is intended to vest the gift over. But this reasoning is inapplicable if a life interest intervenes between the testator's death and the time when the fee becomes possessory. In such cases, it is generally held that the time of death contemplated in such a limitation is the death of the life tenant or first taker. Booth v. Eberly, 124 Md. 22, 91 A. 767; In re Waterbury Trust Co., 128 Misc. 582, 219 N.Y.S. 614; Matter of Farmers' Loan & Trust Co., 189 N.Y. 202, 82 N.E. 181; Hohnbach v. Hohnbach, 151 Wis. 487, 139 N.W. 731; Starnes v. Sanders, 151 Ga. 632, 108 S.E. 37; Harrington v. Cooper,

126 Ark. 53, 189 S.W. 667; 2 Simes on Future Interests, supra, § 330." [16]

We have examined with great care the cases cited to us by appellee, given in the annotation at 109 A.L.R. 56 as supporting the proposition that a remainder given by a will containing a direction that the children of a deceased remainderman should take their parent's share, is vested not subject to be divested. But upon examination it appears that in many of these cases there was a definitive phrase fixing the time, and that in almost all of the states from which cases are cited, there is a line of authority to the contrary where a contingency, such as "leaving issue surviving", is expressed and a life estate intervenes.[17] The two Supreme Court cases mentioned are not helpful in the problem before us, because both of them contained phrases definitive of the time. The language in the will in McArthur v. Scott [18] was "if any grandchild aforesaid shall have died before said final division," and in Johnson v. Washington Loan & T. Co.,[19] the language was

[16] Simes, in his Future Interests, Vol. 2, § 330, sums up the matter thus: "Suppose a testator devises property to A for life, remainder to B in fee, but, if B die without children, remainder to C in fee. Three constructions are possible: First, that 'die without children' means die without children before the death of the testator; second, that 'die without children' means die without children before the death of A, the life tenant; and, third, that 'die without children' means die without children at any time. The first two are fairly termed substitutional constructions; the third, obviously, is not. The second construction, that of implying a condition that the death without children must occur prior to the death of the life tenant, is followed by the great majority of courts where this or similar fact situations are presented. A few jurisdictions hold that death at any time is meant, even though there is a preceding life estate. And there are a few cases which take the other view, namely, that the phrase means death before the testator. The position taken by the majority of courts in this situation would seem amply justified. Not only does it further the prevailing policy of alienability and early vesting, but it also would appear likely to accord with the normal wishes of a testator."

See also Tiffany on Real Property (3d ed. 1939) § 370; Thompson on Construction of Wills §§ 242, 253, 257.

The Restatement of the Law of Property, Future Interests gives the following illustrations: "19. A, owning

shares having a market value of $20,000, transfers these shares 'to B for life, remainder to C, his executors, administrators and assigns, but if C dies survived by issue, then to such issue.' C has a remainder vested subject to complete defeasance." § 157, Comment par. r, illus. 19. "1. A, owning Blackacre in fee simple absolute, makes an otherwise effective devise of Blackacre 'to my wife B for life, and then to my daughters C and D absolutely, and in case of the death of either C or D, the share of the one so dying to her children.' At A's death C and D are both alive. C predeceases B, leaving children E and F and a will which makes an otherwise effective devise of C's interest in Blackacre to G. B dies. D has an indefeasible estate in fee simple in an undivided half of Blackacre and E and F have a like interest in the other undivided half of Blackacre. G has no interest in Blackacre." § 264, illus. 1. See Id., §§ 157, 264, 269 and 277.

[17] See cases cited in Notes (1937) 109 A.L.R. 5, 35 et seq., and Compton v. Rixey's Ex'rs, 1919, 124 Va. 548, 98 S.E. 651, 5 A.L.R. 465; Redmond v. Gummere, 1922, 94 N.J.Eq. 216, 119 A. 631; Emmons v. Weihman, 1920, 112 Misc. 231, 184 N.Y.S. 86; Lachenmyer v. Gehlbach, 1914, 266 Ill. 11, 107 N.E. 202; Delaware County Trust Co. v. Hanby, 1933, 19 Del.Ch. 228, 165 A. 568; Harvey v. Bell, 1904, 118 Ky. 512, 81 S.W. 671.

[18] 1885, 113 U.S. 340, 5 S.Ct. 652, 654, 28 L.Ed. 1015.

[19] 1912, 224 U.S. 224, 32 S.Ct. 421, 56 L.Ed. 741.

"among my daughters living at my death." Other cases cited by appellee relate to the time of vesting in interest and are not pertinent to the problem before us.

The expression in the will before us is not death "without issue" but death "leaving a descendant", and the vast majority of the reported cases in this field concern limitations upon failure of issue. The learned framers of the Restatement of the Law of Property, Future Interests [20] treat the expressions "die without issue" and "survived by issue" equally as contingencies and apply the same rule in determining the effective time of such expressions, and we agree with them to the extent of believing that the basic principles of "without issue" cases are helpful in construing limitations upon death leaving descendants surviving.

■ We think it clear that the testatrix in the present case did not intend by the last sentence in paragraph Fourth of her will to refer to the death of her sons during her own lifetime only. In the first place, it may reasonably be supposed that the testatrix would contemplate taking care of events before her death by a new will, or a codicil, but at the same time provide for events after her death but before the time when the devise in fee became possessory. Moreover, it hardly seems reasonable that if she had meant to limit the substitution of devisees to her own lifetime she would have placed such general language after provisions for two successive life estates and a remainder clearly successive to the life estates. The placement of the sentence in the paragraph and the generality of its terms negative the idea that it was intended to be of effect only if the sons died before the testatrix. Again, as we have already said, the fact that the testatrix used the expression "or in case she die before me" in referring to the substitution of Caroline Pyne in place of Caroline Frailey as life tenant, indicates that she would have used the same words if she had meant to restrict to her own lifetime the substitution provided in the last sentence of the paragraph.

We do not think the sentence in controversy can be construed as referring to the final extinction of the line of descendants. To do so would be to construe it as devising an estate tail, which, in this jurisdiction,[21] must be translated into a fee simple. The fee simple having already been devised in the preceding sentence, the result would in effect be to strike the last sentence. We do not think that the testatrix intended to do that which she must be presumed to have known was a nullity.

It is our view that the sentence under consideration was intended to refer to the death of the sons at any time prior to the death of their sister, Caroline Pyne. In our view, this construction fits such internal evidence of intention as we can glean from the will itself, and is also in accord with the the great weight of authority upon the point.

■ We, therefore, conclude that by the last sentence of paragraph Fourth, the testatrix intended to, and did, provide that upon the death of John Pyne, leaving a descendant, during the lifetime of Caroline C. F. Pyne, the descendant of John Pyne should become the remainderman in his stead. In the language of future interests, as to three-fourths of the property we hold that upon the death of the testatrix, each designated remainderman took a vested remainder in fee simple subject to be divested in the event of his death, leaving a descendant, prior to the death of the life tenant;[22] that upon the event of divestment, the substituted remainderman took the remainder.[23] Since John Pyne's assignment to Henry Pyne carried John Pyne's interest only, it was ineffective as against Jennifer Pyne upon the death of John Pyne prior to the death of Caroline C. F. Pyne. As to the one-fourth of the property in which John Pyne's interest was contingent, his assignment was subject to the same limitations as his vested interest; his descendant became a substituted remainderman when he died before the event which constituted the contingency upon which his interest depended. As the District Court held that John Pyne's interests were indefeasible, it follows that the decree must be reversed.

Reversed.

---

[20] Sec. 157(r) (5) and Illustrations 12 and 19; Secs. 264–267. See also Warren, supra note 6.

[21] See note 7 supra.

[22] In this case, as we have repeatedly said, the same result would follow if it be held that the event of divestment was death of the remainderman at any time, leaving a descendant.

[23] Siebert v. Ohliger, N.J.Ch.1923, 121 A. 747; Wilson v. Pichon, 1932, 162 Md. 199, 159 A. 766; Boulden v. Dean, 1934, 167 Md. 101, 173 A. 26; and cases cited supra, note 17.