CENTRAL DISPENSARY AND EMERGEN-
CY HOSPITAL et al. v. SAUNDERS
et al.

SAUNDERS v. SAME.
Nos. 9404, 9405.

United States Court of Appeals
District of Columbia.

Argued April 16, 1947.

Decided Jan. 12, 1948.

Mr. Joseph T. Sherier, of Washington, D. C., with whom Messrs. Charles F. R. Ogilby, Jr., Arthur P. Drury, James Sherier, and G. Thomas Dunlop, all of Washington, D. C., were on the brief, for Central Dispensary and Emergency Hospital of the District of Columbia, et al.

Mr. Francis C. Brooke, of Washington, D. C., with whom Mr. Paul B. Cromelin, of Washington, D. C., was on the brief, for Norman B. Saunders.

Mrs. Elizabeth M. Cox, of Washington, D. C., for Mildred Frances Saunders, et al.

Mr. Howland O. Walter, of New York City, for Alfred E. Leach and Mildred J. Kayser.

Before STEPHENS, CLARK, and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

This suit was brought in the District Court of the United States for the District of Columbia to obtain a construction of the wills of Lorin M. Saunders and his wife, Julia I. Saunders.

Lorin M. Saunders executed his will on February 25, 1905, and died on the following May 15th. He was survived by his wife, Julia, and one child, Fenton G. Saunders, who was slightly more than thirteen years old at the time of his father's death. Fenton died, unmarried and without issue, on February 26, 1915, leaving a will which gave his entire estate to his mother.

Julia I. Saunders executed a will on November 7, 1927. She passed away on February 7, 1942. After certain specific bequests, Julia left the residue of her estate "not otherwise disposed of by and under the direction of this will" to Central Dispensary and Emergency Hospital of the District of Columbia, Garfield Memorial Hospital of the District of Columbia, Presbyterian Home for the Aged of the District of Columbia, and the Washington Home for Incurables of the District of Columbia. Those institutions are the appellants in case No. 9404.

The pertinent portions of the will of Lorin M. Saunders, with the paragraphs

numbered for convenience in reference, are as follows:

1. "It is my desire that my residence property, situated at the northwest corner of Wyoming and Connecticut Avenues, in the subdivision known as Washington Heights, in the District of Columbia, shall remain in the name of Saunders, as a home for my wife and son, as long as possible, and I therefore give, devise and bequeath the same with all the furnishings therein to my wife, Julia Isobelle Saunders, that she may keep the same as such home as long as she may live, hereby giving her, my said wife, full power and authority to sell and convey the same in fee simple or otherwise, at any time she may deem it expedient and proper so to do; and the purchaser or purchasers of said property shall not be required to see to the application of the purchase money.

2. "And in case my said wife shall not sell or dispose of said property during her life, at her death it shall pass, and I bequeath the same, with all the furnishings therein, to my son, Fenton Green Saunders, with full power in him to sell the same when he arrives at the age of twenty-five years, if his mother is then deceased. It being my intention to give my said son the same power of disposition of said property after his mother's death, as she, my wife, shall have. And in case the said property is not disposed of by either my wife or son, it shall pass at his death, to such of his children, if any, as he may by will direct, and in case he shall not make such direction, it shall pass to such person or persons as would be his heirs at law.

3. "And after the payments of my just debts, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of which I may die seized, to my wife, Julia Isobelle Saunders, in trust with full power to sell, mortgage, or convey the same in fee simple or otherwise, as in her judgment may be expedient, and the purchaser or purchasers thereof shall not be required to see to the application of the purchase money. And the income or proceeds of the sale of such property shall be applied and used for her support and maintenance, and for the support and education of my said son, it being my desire that he shall be given a college education.

4. "And when my said son shall arrive at the age of twenty-five years, I direct such of the remainder of my property, real or personal, other than the residence property, then undisposed of and not used for, or necessary for the purposes of her maintenance or support aforesaid, shall be conveyed or given to him absolutely, if in the judgment of my said wife it is expedient so to do; but not otherwise. For if my said wife so desires, and shall deem it best for the welfare of our son, Fenton, she may keep the whole of said property for such time, after he arrives at the age of twenty-five and until she may deem it expedient to convey to him the real estate and give him the personal property then remaining, even though it be for her natural life.

5. "It is my desire that my said wife shall have full power and authority to dispose of any or all of my property whether real or personal when she may deem it for the best interest of my estate to do so.

6. "And that she may use the income, or principal from my estate if necessary for the proper support and maintenance of herself and my son, the amount so expended or used being left to her discretion intending only, that such part or the remainder of my estate, existing at the death of my wife, if not conveyed or turned over to my son, by her, prior to her death, as herein provided, shall pass to him or his heirs absolutely.

7. "And in case my wife shall die before our son, Fenton, reaches the age of twenty-five years, then I request that application shall be made to the court for the appointment of some suitable person to carry out the trust herein, provided until he reaches such age, at which time and in that event all of my property then remaining shall pass to and become vested in my son absolutely.

8. "And in case my said son shall die without leaving lawful issue, the whole of my estate, after the death of my wife, shall pass and descend to my heirs at law."

Although Julia Saunders had the power under Lorin's will to invade the principal of his estate, she did not entirely consume it, the result being that when she died in 1942 there remained undisposed of certain real estate which had belonged to her husband, Lorin M. Saunders. The determination of the ownership of that real estate is the purpose of this litigation.

The two appeals before us present two questions. In No. 9404 the question raised by the appealing institutions may be stated thus: does the property in question belong to the collateral kindred of Lorin M. Saunders or does it belong to the residuary legatees of his widow, Julia I. Saunders? The question in No. 9405, in which Norman B. Saunders is the appellant, may be stated in this manner: if the residual estate of Lorin M. Saunders belongs to his collateral heirs, should it be distributed among them per stirpes, according to the statute [1] in effect at Lorin's death, or per capita among Lorin's nieces and nephews, and per stirpes among the great nephews and great nieces, according to the statute [2] in effect when Julia died?

The appellant institutions claim that Fenton G. Saunders, under his father's will, took a vested remainder in the portion of his father's estate which remained unconsumed at the time of his mother's death, and that such remainder passed to Julia Saunders by the terms of Fenton's will.

The appellees are nephews and nieces of Lorin M. Saunders and are the persons who were his heirs at law as of the date of Julia's death, that is, as of the date of the termination of the life estate. They claim the property which remained at the time of Julia's death under the eighth paragraph of Lorin's will.[3]

The appellees argue that Fenton's remainder was not vested, but contingent; that even if vested, it was divested by the happening of the contingency mentioned in the eighth paragraph of Lorin's will, which contingency was that Fenton might die without leaving lawful issue.[4] In other words, the appellees' position is that when Fenton died without leaving lawful issue, his remainder interest was extinguished and, at the subsequent death of Julia, the property remaining passed to them under the eighth paragraph of Lorin's will.

The matter was disposed of by the District Court on the pleadings, in response

---

[1] Code of law for the District of Columbia 1901, § 955:

"Sec. 955. Representation.—If in the descending or collateral line any father or mother shall be dead, leaving a child or children, such child or children shall, by representation, be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother if living would have been entitled to, and no more; and in such case, when there are more children than one, the share aforesaid shall be equally divided among such children."

[2] District of Columbia Code 1940, § 18—105, Act of March 6, 1935, 49 Stat. 40, Ch. 28, Sec. 5:

"18—105 (25:246). Representation. Whenever those entitled to share in the estate in fee simple in lands, tenements, or hereditaments in the District of Columbia, of an intestate, are all in the same degree of kindred to the intestate, they shall take per capita or by persons; and, where a part of them are dead and a part living, the issue of those dead shall take per stirpes or by stocks the shares of their deceased parents."

[3] Lorin M. Saunders was survived by two brothers and one sister, none of whom survived Julia. The appellees are their children and grandchildren who survived Julia. The appellee, Norman B. Saunders, is the only child of one of Lorin's brothers and naturally therefore is quite convinced not only that Lorin's collateral heirs are entitled to take his residual estate under paragraph 8 of his will, but also that the distribution among them should be made according to the statute in effect at Lorin's death. Under that statute Norman would receive one third of the estate, whereas under the statute in effect at Julia's death he would receive a much smaller fraction, as yet undetermined.

[4] For reasons which will be given later in this opinion, we do not regard it as material to the problem here to determine whether Fenton's remainder was contingent or vested, although it must be admitted, as we said in Pyne v. Pyne, 81 U.S.App.D.C. 11, 15, 154 F.2d 297, 301, that the expression "if A dies without issue" is the language of contingency.

to a motion for "a summary and declaratory judgment construing the wills of Lorin M. Saunders and Julia I. Saunders and determining who has title to and owns the real estate and rents" described in the complaint. The court's conclusions of law were as follows:

"1. The last will and testament of Lorin M. Saunders should be construed as providing that if his only son, Fenton, died without issue before Fenton's mother, Julia I. Saunders, died, the remainder of the estate of Lorin M. Saunders should go to the collateral heirs of Lorin M. Saunders upon the death of Julia I. Saunders, the identity of such collateral heirs to be determined as of the date of death of Julia I. Saunders.

"2. Julia I. Saunders had no interest or estate in the property described in Paragraphs 8 and 11 of the Complaint which could be devised or bequeathed by her last will and testament.

"3. The Court makes no conclusion of law as to the interpretation of the last will and testament of Julia I. Saunders, deceased."

The learned trial justice also filed an informal memorandum which is in part as follows:

"I have heretofore held that Lorin M. Saunders intended that if his only son, Fenton, died without issue before Fenton's mother, Julia I. Saunders, died, the remainder of the estate should go to the collateral heirs of Lorin M. Saunders upon the death of Julia I. Saunders, the identity of such collateral heirs to be determined as of the date of the death of Julia I. Saunders.

"I now hold that the identity of the collateral heirs entitled to share in the distribution and the method of distribution should be determined by the law in force and effect at the time of the death of Julia I. Saunders, the life tenant. It follows that the surviving nephews and nieces of Lorin M. Saunders will take per capita and that the issue of nephews and niece of Lorin M. Saunders who predeceased Julia I. Saunders will take per stirpes the shares of their deceased parents."

1. *No. 9404, the appeal by the hospitals.*

In contending that Fenton, who had predeceased Julia, took under paragraph 6 of Lorin's will a vested remainder in the portion of his father's estate which Julia left unconsumed, and that Julia received that vested remainder under Fenton's will, the appealing institutions were faced with the eighth paragraph of Lorin's will which, for convenience, is here repeated:

"And in case my said son shall die without leaving lawful issue, the whole of my estate, after the death of my wife, shall pass and descend to my heirs at law."

The appellants dealt with the dilemma by making the following statement which we quote from their brief:

"The heirs of Lorin M. Saunders must be ascertained as of the date of his death, unless his will clearly designated some other date. He did not by his will designate any other date, clearly or otherwise." If that assertion be accurate the appellants prevail, since the appellees were the heirs at law of Lorin M. Saunders if, and only if, such heirs were to be ascertained as of a date later than Fenton's death; for until Fenton died he was his father's sole heir at law. Whether Lorin M. Saunders indicated in his will, clearly or otherwise, that his heirs at law should be ascertained at some date other than the date of his death depends on the meaning of the eighth paragraph of his will. If it be said that he intended his heirs at law to be ascertained as of the date of his death, the eighth paragraph must be rejected entirely or it must be read as though it were worded in this fashion:

"And in case my said son shall die without leaving lawful issue, the whole of my estate, after the death of my wife, shall pass and descend to my heirs at law, by which term I mean to designate my then dead son."

But paragraph 8 cannot be rejected, and the patent incongruity of saying it designates Fenton, after his death, as the heir at law who takes under it, is obviated by

the application of an established rule of testamentary construction.[5]

The rule to which we refer is stated in Restatement, Property § 269, in the following language:

"When property is limited by an otherwise effective conveyance 'to B for life (or years), remainder to C and his heirs, but if C dies without issue, then to D,' or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the interest of D can become a present interest if, but only if, C dies at or before the time of the termination of the interest of B in accordance with the terms of the limitation and is unsurvived by issue at the time of his death."

In Pyne v. Pyne, 81 U.S.App.D.C. 11, 15, 154 F.2d 297, 301, we said, "The only cases, in which we find the authorities in agreement in fixing the lifetime of the testator as the time of the effectiveness of a clause relating to the death of a devisee, are those in which the devise is directly to A and if A die (or should A die), then to B. There no contingency is stated, and no life estate intervenes." We later added, "When a contingency is added to the reference to the death of the devisee—as 'Blackacre to A and if he die without issue, to B'—a different situation is presented, because, whereas 'if A dies' is not a contingency, 'if A dies without issue' is a contingency."

■ The great weight of authority, as we pointed out in the Pyne opinion, supports the rule that, in the absence of a statute, where a will creates a life estate and refers to the death of a remainderman without issue, but with no specification as to the time of the death of such remainderman, his death prior to the death of the life tenant is meant. The authorities are collected and analyzed in the Pyne opinion. A similar holding by this court will be found in Herrell v. Herrell, 47 App.D.C. 30, in which Britton et al. v. Thornton, 112 U.S. 526, 5 S.Ct. 291, 28 L.Ed. 816,

is cited as laying down the rule there followed.

■ We hold, therefore, that under the will of Lorin M. Saunders Fenton's remainder died with him, and consequently the heirs at law referred to in the eighth paragraph are to be ascertained as of the date of the death of the life tenant, Julia I. Saunders. That being true, the appellees take the property in dispute here as devisees of Lorin M. Saunders under that paragraph.

■ We do not decide whether Fenton's remainder under the sixth paragraph was vested or contingent for, as we said in Pyne v. Pyne, supra, the result is the same no matter which it was. As every portion of a will must be given effect if possible, paragraph 8 of Lorin's will must be treated in that manner. We have construed the words "heirs at law" in paragraph 8 as referring to those persons who would have been Lorin's heirs at law had he died just after Julia's death. Consequently, if Fenton's remainder under paragraph 6 was a vested interest, it was divested by paragraph 8 when he died without leaving lawful issue. If the remainder under paragraph 6 was contingent, it was terminated by the occurrence of the contingency envisaged in paragraph 8.

■ In our view, therefore, the interpretation of the will of Lorin M. Saunders given by the learned justice of the District Court is in all respects correct. The District Court expressly disclaimed making any interpretation of the will of Julia I. Saunders. Had it done so, it would have discovered that the appellant institutions in No. 9404 have no claim to the property here involved, even had they been correct in asserting that Julia I. Saunders obtained that property under the will of her son, in saying that she owned it when she died, and in contending that she had a right to and did dispose of it by her will.

The whole claim of the hospitals to the real estate which originally came from

---

[5] Cf. Costello v. Costello, 80 U.S.App. D.C. 75, 149 F.2d 379; Welch v. Brimmer, 169 Mass. 204, 47 N.E. 699; Johnson v. Askey, 190 Ill. 58, 60 N.E. 76; Genung v. Best, 100 N.J.Eq. 250, 135 A. 514.

Lorin M. Saunders, and which was held by Julia when she died, is based on the assumption that that property was devised to them, or that the money received by the executor from the sale of the property was bequeathed to them, by this language of Julia's will:

"All the residue, and remainder of my estate not otherwise disposed of, by and under the direction of this will, I direct my executor to convert into cash where necessary and distribute it in the following manner."

The "following manner" was to divide it among the institutions who are the appellants in No. 9404.

Had the property actually passed under Julia's will, it would have passed to the institutions, under the language just quoted, only if it had not been otherwise disposed of by preceding provisions of her will. Just before the paragraphs of Julia's will which gave the "remainder of my estate not otherwise disposed of" to the hospitals, appears this sentence:

"The property which I received from my late husband is to be distributed in accordance with the terms of his will."

In this connection it is important to bear in mind that Julia's will was executed on November 7, 1927. Fenton had been dead more than twelve years. But Julia continued to identify the property in question in this litigation as "the property which I received from my late husband." Under the appellants' theory, she had received the remainder interest in that property from her son, Fenton, and from his death forward had owned not only a life interest in it but a fee simple title to it. Under their theory Julia was mistaken in thinking that she had obtained the property under her husband's will; but, even if that had been true, for the purpose of this discussion the important fact remains that she described and identified the property by saying that she had received it from her late husband. It clearly appears that, even if she had had the power to make testamentary disposition of what had been her husband's real estate, she directed in her own will that it be "distributed in accordance wtih the terms of his will."

The eighth paragraph of Lorin's will contains the terms to which she referred. In writing the words just quoted from her will, she was obviously providing that the real estate "shall pass and descend" to the heirs at law of Lorin M. Saunders.

It will be admitted by all parties concerned here that the expression "heirs at law" in the eighth paragraph of Lorin's will, adopted by the quoted sentence of Julia's will, refers either to Fenton, the sole heir at law when Lorin died, or to the appellees, his heirs at law determined as of the time of Julia's death. Earlier in this opinion we have held that the term "heirs at law" as used by Lorin M. Saunders in paragraph 8 of his will is to be construed as meaning the appellees herein. But as we are now considering Julia's will, it is of first importance to know what Julia understood by the expression "heirs at law" in the eighth paragraph, when she wrote her will in 1927; for, from her understanding can be gathered her intention as to disposing of that property, had it actually belonged to her as the appellants contend.

It is impossible to suppose that, in 1927, Julia thought the term "heirs at law" meant Fenton, for he had been dead without issue for twelve years at that time. She could not have believed in 1927, when she ordered the property to be distributed in accordance with the terms of her husband's will, that she was directing it to go to Fenton, or to herself as Fenton's heir. Certainly she had no intention in 1927 of writing a devise to a son who had died without issue a dozen years before. She could have meant nothing except that she desired the property to go to her husband's nephews and nieces who are the appellees. Consequently, even if the appellant institutions had been correct in their interpretation of Lorin's will, they are incorrect in supposing that the property passed to them under Julia's will, for the reason that she unmistakably left it to the appellees, and so had otherwise disposed of it before she wrote the residuary clause in favor of the hospitals.

2. *No. 9405, the appeal by Norman B. Saunders.*

As we have pointed out, Lorin M. Saunders was survived by two brothers and one

sister, all of whom died before the death of Julia I. Saunders. The appellees in No. 9404 are either children, or children of deceased children, of those three persons. Norman B. Saunders is the only child of one of Lorin's brothers. The sister and other brother are represented in this litigation by several descendants, so Norman is the one individual who would receive one third of the estate if the heirs at law of Lorin M. Saunders were ascertained as of the date of his death, with his son, Fenton, excluded.

It is ordinarily the rule that when a limitation is in favor of "heirs" of a designated person, and those who come within the term "heirs" are to be determined by a statute governing the intestate succession of property, the statute is applied as of the death of the designated ancestor, unless a contrary intent appears.[6] that a contrary intention is apparent when the application of the ordinary rule, referred to above, would result in an incongruity.[7] An incongruity of the type mentioned in comment k may be seen in this case. Here the remainderman, whose death without issue would cause the devise

over to become effective after the death of the life tenant, was the sole heir at law when the testator died. To apply to this situation the ordinary rule stated in Restatement, Property § 308, would make it necessary to interpret the eighth paragraph of Lorin's will as though it were worded thus:

"And in case my said son shall die without leaving lawful issue, the whole of my estate shall pass and descend to him, after the death of my wife."

The incongruity of such an interpretation approaches absurdity.

Since the heirs of Lorin M. Saunders are to be ascertained as of the death of the life tenant, it would be wholly illogical to determine the method of distribution among them by any statute other than that which was in effect at that time.[8] We hold that the heirs at law are to take the estate under the provisions of Title 18, § 105, District of Columbia Code 1940.

Affirmed.

Judge STEPHENS concurs in the result.

---

[6] Restatement, Property § 308.
"When a limitation is in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances."
But comment k under § 308 points out

[7] "k. Contrary intent — Postponing time of statute's application—Prior interest in sole heir or next of kin. If a person to whom a prior interest in the subject matter of the conveyance has

been given is the sole heir of the designated ancestor at the death of such ancestor, there is some incongruity in also giving such person all the interest under the limitation to 'heirs' or 'next of kin.' The incongruity is especially great when a will conveys property 'to B and his heirs but if B dies without issue to my heirs' and B is the sole heir of A. The incongruity is almost as great when A, by will, conveys property 'to B for life then to my heirs' and B is the sole heir of A. Thus, the fact that in such cases, B is the sole heir of A at the death of A tends to establish that A intended his heirs to be ascertained as of the death of B, so that B is prevented from sharing in the limitation to the heirs of A."
[8] Cf. Costello v. Costello, supra.