EPISCOPAL EYE, EAR AND THROAT HOSPITAL, a corporation, Appellant

v.

Anne Stockton GOODWIN and Cathedral Church of St. John the Divine, Appellees.

Helen King Stockton PARKER et al., Appellants

v.

Anne Stockton GOODWIN and Cathedral Church of St. John the Divine, Appellees.

PROTESTANT EPISCOPAL CATHEDRAL FOUNDATION OF THE DISTRICT OF COLUMBIA, a corporation, Appellant

v.

Anne Stockton GOODWIN and Cathedral Church of St. John the Divine, Appellees.

PROTESTANT EPISCOPAL PARISH OF ST. STEPHEN AND INCARNATION, Appellant

v.

Anne Stockton GOODWIN and Cathedral Church of St. John the Divine, Appellees.

WASHINGTON HOME FOR INCURABLES, Appellant

v.

Anne Stockton GOODWIN and Cathedral Church of St. John the Divine, Appellees.

Nos. 15181, 15182, 15192, 15194, 15195.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 29, 1959.

Decided April 21, 1960.

Mr. Murray Preston, Washington, D. C., attorney for appellant in No. 15181, argued for appellants in Nos. 15181, 15192, 15194 and 15195. Mr. G. Bowdoin Craighill, Washington, D. C., was on the brief for appellant in No. 15192. Mr. James A. Crooks, Washington, D. C., was on the brief for appellant in No. 15194. Mr. Stanton C. Peelle, Jr., Washington, D. C., was on the brief for appellant in No. 15195. Mr. A. G. Nichols, Jr., Washington, D. C., also entered an appearance for appellant in No. 15195.

Mr. Alexander B. Hawes, Washington, D. C., with whom Mr. Robert Martin, Washington, D. C., was on the brief, for appellants in No. 15182.

Mr. John J. Ross, Washington, D. C., with whom Messrs. Frederick M. Bradley and Howard F. Roycroft, Washington, D. C., were on the brief, for appellee Anne Stockton Goodwin.

Mr. Jaquelin A. Marshall, Washington, D. C., for appellee Cathedral Church of St. John the Divine.

Before EDGERTON, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Helen King Luquer died in 1930 and her will was admitted to probate in the District of Columbia. The will was executed in 1894; codicils were executed in 1902 and 1929. She was survived by her husband who died in 1932, and a son and daughter, both of whom died without issue in 1957.

The issue in this case involves the distribution of a portion of decedent's residuary estate. The testatrix established two residuary trusts, granting life estates to her children, Margaret and Lynch Luquer. In the event either or both children left issue surviving them the remainder passed to them. Since both Margaret and Lynch died childless, these provisions never became operative.

In the event both children of the testatrix died without issue provision as to the remainder was made in Item Ninth of the will:

"Ninth: And in the event of both of my said two children dying without leaving any children, issue or descendants them surviving, then Upon the further Trust upon the decease of the last survivor of my said Two children, to pay over, convey, transfer, assign and deliver in equal shares to my nieces Helen Frederika Shelton and Frances Edwards Shelton, for their own use forever, the whole of said balance of the residue of my property and estate composing the Trust fund theretofore held for the benefit of my two children. If *either* of my said nieces shall have died before the happening of the contingency upon which the above provision in their favor would take effect, and shall leave issue or descendants her surviving at the time such provision would take effect, then such issue or descendants shall take in equal shares per stirpes and not per capita for their own use forever, the share of such Trust property and estate which is [sic] or their parent would have taken if living, under the provisions of this Will.

And if *either* of said nieces previous to the happening of the contingency upon which the provision in their favor herein contained would take effect, dies without leaving any issue or descendants her surviving, *then the survivor of my said two nieces, her heirs and next of kin, shall succeed and be entitled for her and their own use forever, to the share of the deceased niece.*" (Emphasis added.)

■ The contingent remaindermen (nieces Helen and Frances), did not survive the life tenants (Margaret and Lynch), and left no issue.[1] Thus, while one of the contingencies upon which the nieces took (death of Margaret and Lynch without issue) occurred, the question arises as to the distribution of the remainder since neither niece was alive on Dec. 23, 1957, when the last life tenant died.[2]

The Trustee sought instructions in the District Court as to the interpretation of Item Ninth. Possible claimants fall into three groups:

(a) Those who contend that since the contingency that actually occurred was neither foreseen nor specifically mentioned in the will, there was an intestacy as to the trusts, and a reversion to the testatrix' estate. Their claim is grounded on the contention that there was an implied condition in the will that the nieces survive the life tenants in order to take. These will be termed the "Intestacy Claimants."

(b) The second group claim under the will of niece Frances Shelton, the survivor of the two nieces. They contend Frances, who survived the testatrix and her sister Helen, took the entire trust principal whether or not she survived the life tenants. They further contend that Frances' interest passed through her will to them. These will be referred to as the "Legacy Claimants."

(c) The last group claim as heirs and next of kin of Frances. They base their claim on two grounds:

(1) There was an implied condition that the nieces survive until distribution in order to take, and since Frances (the last dying niece) did not so survive, her interest was defeated.

(2) However, this group interprets the words "survivor of my said two nieces, her heirs and next of kin" in the second paragraph of Item Ninth to create a substitutional gift to those persons who, at the death of the life tenants, occupy the status of heirs of Frances. In short, they would construe the bequest in paragraph two as if it read "survivor of my said two nieces *or* her heirs and next of kin."

These last claimants will be termed the "Heirs Claimants."

There being no issue of fact, all claimants moved for summary judgment. The District Court ruled in favor of the "Legacy Claimants" holding, in effect, that there was no implied condition that the surviving niece Frances survive the life estate holders in order to take, and that the trust assets passed to her legatees. An order was entered granting the "Legacy Claimants" the "entire assets of the trust estate."

## I

It is important to bear in mind that we are concerned with the passing of *two* primary gifts: ½ of the trust estate to Helen, and ½ to Frances. The two gifts must be considered in light of the express contingencies for which the testatrix provided and in light of events and circumstances.

The first part of Item Ninth grants the two remainder gifts to Helen and

---

1. Niece Helen Shelton in fact died prior to the testatrix. However, the testatrix specifically provided for a gift over, thus saving her share from lapse. See Robison v. Female Orphan Asylum, 1887,

123 U.S. 702, 708, 8 S.Ct. 327, 31 L.Ed. 293.

2. Helen Shelton died testate Jan. 24, 1926; Frances Shelton died testate Jan. 25, 1940.

Frances in the event the life tenants die without issue surviving. Immediately thereafter, instructions are given regarding both shares: if either Frances or Helen should die before "the happening of the contingency upon which the above provision in their favor would take effect" (i. e., death of the life tenants without issue), and, in addition, if the nieces should leave issue or descendants surviving at that time, then such issue or descendants would take the share their parents would have taken. Thus if Helen, for example, died prior to the death of the life tenants, leaving issue surviving her at that time, then such issue would take Helen's share. Further, if Frances predeceased the life tenants, leaving issue surviving at that time such issue would take her share. Our first question then is whether either Helen, or Frances, had to survive the life tenants in order to avoid divestiture of her primary share.

However, Item Ninth, which is applicable to *both* gifts, contains provision for a further contingency. The second paragraph of Item Ninth directs that if the first dying niece (in this case Helen) died without issue prior to the death of the life tenants (as she did), the share of that niece would pass to the "survivor of my said two nieces, her heirs and next of kin." The striking difference between the contingency in the second paragraph of Item Ninth, and the one embodied in the first paragraph is that the former is only applicable to *one* share, i. e., the share of the *first dying* niece. The reason seems clear: in the second paragraph of Item Ninth the "share of the [first] deceased niece" (Helen) passes to "the survivor of my said two nieces," etc. By its very terms the second paragraph speaks of only one gift, and does not relate to the primary gift to Frances. In sum, Item Ninth contains two separate divesting conditions:

(a) The first paragraph contingency which by its terms could operate to divest either Helen or Frances of her primary gift.

(b) The second paragraph contingency which, by its terms, is applicable to only one gift, the gift to the first dying niece, Helen.

The will does not state expressly whether it is necessary for either niece to survive the life tenants in order to take her primary share. But the above indicates a second problem. As to the share of the first dying niece (Helen), must the "survivor of my said two nieces" (Frances) also survive the life tenants in order to take *Helen's* share? And if Frances must survive the life tenants in order to succeed to Helen's share, do the words "survivor of my said two nieces, her heirs and next of kin" create a substitutional gift of Helen's share to Frances' heirs and next of kin?

II

*Frances' Gift*

The primary gift of ½ the residuary trust to Frances is not expressly conditioned upon her survival of the life tenants. The question is whether the limitations immediately following the gift compel us to imply such a survivorship condition. Those limitations are cast in terms that if *either* niece dies prior to the death of the life tenants, and leaves issue surviving at that time, such issue shall take the parent's share. This is the only limitation applicable equally to both gifts, and, in the light of subsequent events, it is the only one affecting Frances' primary share. Whether or not this limitation also implies that Frances must survive the life tenants depends upon whether we construe the limitation as "alternative" or "supplanting." [3]

In Scott v. Powell, 1950, 86 U.S. App.D.C. 277, 182 F.2d 75, this court discussed the problem of whether contingent remaindermen must survive the life tenants in order to take. It was there pointed out that where a remainderman is specifically divested of his gift by the occurrence of a particular contingency,

3. See Restatement, Property §§ 252–254 (1940).

the gift then passing to a named substitute legatee, the only contingency divesting the gift is the specific contingency for which the testator provided. Thus, if a grant be of a life estate to W, remainder to John, but if John dies prior to W, leaving issue surviving, then to such issue, the only contingency divesting John's gift is his death prior to W, *leaving issue*. If John predeceases the life tenant *without* leaving issue, the gift passes to his estate. The reason for this is that setting out a specific contingency, while failing to provide for an equally plausible one, leads to the conclusion that the gift is only divested at the happening of the events specified. The Restatement of Property characterizes this type of limitation as "supplanting."[4] John is "divested of his interest only by the stated combination of events. This is called a 'supplanting limitation', because the child supplants John as remainderman if John dies before * * * [the life tenant] dies." Scott v. Powell, supra, 86 U.S.App.D.C. at page 281, 182 F.2d at page 79.

■ This rule of construction supplies the answer. The gift of the contingent remainder to Frances, upon the death of the life tenants without issue, was subject to divestment by the happening of not one, but *two* events: (1) death prior to the life tenants, *and* (2) leaving issue or descendants living at the death of the life tenants. She would have been "divested of * * * [her] interest only by the stated combination of events." Ibid. However, one of these events did not occur; Frances did not leave issue. Hence her share was not divested by her failure to survive the life tenants, but instead passed to her estate.

This holding is supported by numerous cases to the same effect. See Scott v. Powell, supra; Warner v. Warner, 1956, 99 U.S.App.D.C. 80, 237 F.2d 561; Pyne v. Pyne, 1946, 81 U.S.App.D.C. 11, 154 F.2d 297; Hauptman v. Carpenter, 1900, 16 App.D.C. 524; Phillips v. Behrens, D.C.D.C.1948, 81 F.Supp. 347;

American Security & Trust Co. v. Garnett, D.C.D.C.1948, 81 F.Supp. 21; American Security & Trust Co. v. Sullivan, D.C.D.C.1947, 72 F.Supp. 925; cf. Restatement, Property § 254 (1940). Therefore, as to Frances' primary share the District Court correctly held she did not have to survive the life tenants to take, and, as we have indicated, that primary gift of ½ the trust remainder passes through the will of Frances to her legatees.

### III

### *Helen's Gift*

As to Helen's share, a different result ensues. That share was also subject to the same contingencies applicable to Frances' gift. But there was another condition to Helen's share, and it was a condition applicable only to her as the first dying niece. The second paragraph of Item Ninth provides that if the first dying niece dies prior to the death of the life tenants, without issue or descendants surviving her, the "share of the deceased niece" would pass to the "survivor of my said two nieces, her heirs and next of kin," i. e., to Frances, her heirs and next of kin.

The problem calling for construction is that while it is clear that Frances must survive Helen to take Helen's share, there is no expression whether or not Frances must also survive the life tenants to take Helen's primary gift. For the words "survivor of my said two nieces" do not fix the time to which survival refers. In their context they define survivorship only as between Frances and Helen.

Similar problems have confronted us in the past. In Caine v. Payne, 86 U.S. App.D.C. 404, 182 F.2d 246, 20 A.L.R.2d 823, certiorari denied Caine v. Caine, 1950, 340 U.S. 855, 71 S.Ct. 72, 95 L.Ed. 626, we construed the following grant: To A and E for life, remainder to nephews X, Y and Z, "or the survivors or survivor of them." This was plainly in the nature of a gift of the remainder

4. Id. § 254.

in joint tenancy to the 3 nephews. We held that the terms used indicated an intent that the remaindermen, in order to take, had to survive the life tenants. This suggests that in order for Frances to take Helen's share, as distinguished from her own primary gift, she must survive the life tenants. This result is consistent with the Restatement of Property § 251 (1940), which states: "In a limitation purporting to create a remainder or an executory interest, a description of the intended takers as persons 'who survive,' * * * or by other language of the same import, but which fails to designate the time to which such takers must survive, tends to establish the time of the termination of all preceding interests as the time to which survival is required."

■■ More important, however, the plain words of the will pass the gift to the "survivor of my said two nieces, her heirs and next of kin * * * for her and their own use forever." The "Intestacy Claimants" contend the words "her heirs and next of kin" are words of limitation, thus adding nothing to the grant. We cannot agree. While the word "heirs" is usually used as a word of limitation, it can be, and sometimes is, interpreted as a word of purchase. See Greenwood v. Page, 1943, 78 U.S. App.D.C. 166, 138 F.2d 921. On the other hand, the term "next of kin" is not one of limitation since it refers to a specific group of persons rather than to an indefinite line of succession. Further, this combination of terms "heirs and next of kin" appears only in this one paragraph; where the testatrix granted an absolute interest, she did not use the term "heirs." Giving the phrase a "limitations" construction would render it surplusage, a construction in conflict with its specific use here. At least one court has indicated the use of the words "heirs and next of kin" implies the deceased intended them to be words of purchase. **Matter of Tamargo,** 1917, 220 N.Y. 225, 115 N.E. 462.

Interpreting them as words of purchase results in reading the comma after "survivor of my said two nieces" as meaning "or" so that the gift is to "the survivor of my said two nieces *or* her heirs and next of kin." Read in this light, the limitation is an "alternative" limitation, i. e., a gift to the surviving niece *or* her heirs and next of kin. This usage, in turn, indicates a choice between two takers, the choice to be made at the time of the death of the life tenants. See Scott v. Powell, supra; Caine v. Payne, supra.

■ Thus, we conclude that in order to succeed to Helen's share, Frances must have survived the termination of all precedent estates. Frances' failure to survive the life tenants divested her of Helen's primary share in favor of the alternative remaindermen, Frances' "heirs and next of kin" alive at the date of distribution.

In so far as the District Court passed Helen's share of the trust remainder to the "Legacy Claimants," it was incorrect. Our construction of the will leads to the following results:

(a) One-half the remainder of the trust estate, representing Frances' primary gift, should be distributed to the "Legacy Claimants," Anne Stockton Goodwin and The Cathedral Church of St. John the Divine, in the proper amounts as directed by the Will of Frances Shelton.

(b) One-half the remainder of the trust estate, representing Helen's primary share, should be distributed to such of the "heirs and next of kin" of Frances, as surviving remaindermen, who were living on Dec. 23, 1957.

Affirmed in part; reversed in part and remanded to the District Court for action in accordance with this opinion.