Diana Kearny POWELL, Appellant,

v.

**NATIONAL SAVINGS AND TRUST COMPANY**, Successor Trustee, et al., Appellees.

No. 16071.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 20, 1961.

Decided July 31, 1961.

Petition for Rehearing En Banc Denied
En Banc Sept. 20, 1961.

Certiorari Denied Dec. 18, 1961.
See 82 S.Ct. 387.

Miss Diana Kearny Powell, pro se.

Mr. Henry H. Paige, Washington, D. C., with whom Messrs. Arthur P. Drury, John M. Lynham, and John E. Powell, Washington, D. C., were on the brief, for appellee, National Savings and Trust Co., Successor Trustee.

Mr. Benj. W. Dulany, Washington, D. C., for appellees Anne T. Ogden and Lester H. Sellers, Ancillary Executors of the Estate of Lucy Powell, deceased.

Mr. Nathan Wald, Washington, D. C., entered an appearance for appellee Martha Powell Nistler and certain other appellees.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant seeks review of a judgment of the District Court construing a testamentary trust pursuant to a petition of the trustee for instructions.

In 1958 the last surviving of five life tenants of the trust estate died and the appellee trustee was required to make final distribution under a residuary trust provision contained in a will executed in 1895. Under the terms of the trust one-half of the trust income was given to each of two daughters of testatrix for life or until marriage, "and upon the marriage or death of both daughters, then *fourthly & finally* to divide the said property *absolutely and in fee*, * * * equally between my children *now* living, viz: the said William Glasgow Powell, Owen Bullitt Powell, George Cuthbert Powell, the said Aimee Elizabeth Powell and the said Lucy Powell, the descendants of any who may die before the time of division hereinbefore fixed, to have and take the share of their deceased parents, it being my intention that my said daughters shall have the whole of said net income in equal shares so long as they live and are unmarried, and upon the marriage or death of one, the whole shall then be paid to the other until her marriage or death, when the entire property is to be equally divided among my children and the descendants of any deceased child or children *as hereinbefore specified.*" (Emphasis added.)

Four of the five children of the testatrix died, without issue surviving, prior to the time of distribution. Appellant is the sole surviving child of William G. Powell, the last survivor of testatrix' five children.

The trustee's request for instructions recited that upon appellant's filing a motion for distribution of the entire estate to herself as the sole surviving descendant of the testatrix, the trustee was unable to determine from the will whether it was to be construed as claimed by appellant or whether it should be construed as giving each of the five children a vested remainder in fee in one-fifth of the trust estate subject to being divested only by his or her death leaving issue prior to the termination of the life estate.

We hold that the will discloses an intent to vest each of the five children with an equal share of the residue "absolutely and in fee," subject only to the life estates of the daughters on the terms described and subject to being divested only if they predeceased the life tenants and were survived by issue.

In Pyne v. Pyne, 1946, 81 U.S.App. D.C. 11, 154 F.2d 297, we held that unless both conditions, death of the remainderman during the preceding life estate and survival of issue of the deceased remainderman are met, the remainderman has a vested interest which passes by his will or by statute as the case may be. See also Scott v. Powell, 1950, 86 U.S.App.D.C. 277, 182 F.2d 75; Episcopal Eye, Ear and Throat Hospital v. Goodwin, 1960, 107 U.S.App.D.C. 375, 278 F.2d 255.

It is suggested by the dissent that this view ignores the testatrix' express inten-

tion which is articulated following the vesting clause "to divide the said property *absolutely and in fee,* * * * equally among my children *now living* * * *." We hold simply that it would take strong and unequivocal language to negate the use of these classic words of art which have accepted meaning and fixed legal consequences. Read as Judge Prettyman reads it, the second part of the sentence is not an explanation but a repudiation of the vesting clause. It should be noted that the explanation or expression of intent which follows the vesting clause, is in turn qualified by the phrase "as hereinbefore specified" which completes the circle and takes us back to the vesting language "absolutely and in fee."

It is no help in the process of searching for intent to look to unanticipated events to prove that the testatrix could not have meant what she said by the words "absolutely and in fee." Of course she had no way of knowing in 1895 that four of her five children would die without issue. But we cannot predicate our construction of the will on what happened over the 63 years intervening between the date of the will and death of the last of five vested remaindermen. Nor can we give such weight as is urged to the "blood line" argument, for if each of her children had been survived by one child those children could have freely distributed this property outside the blood line. That events did not develop as the testatrix probably thought they would does not give us freedom to construe her will now as we think she ought to have written it had she been able to peer 63 years into the future.

Affirmed.

PRETTYMAN, Circuit Judge (dissenting).

The basic rule of the law of wills, as I understand it, is that the intention of the testator, if it can be ascertained from language in the will, governs. This means what he intended as a matter of practical reality in his own mind, in so far as his words indicate his purpose. That question is devoid of consideration of legalisms and the niceties of judicial semantic ascription.

In the case at bar the testatrix clearly stated her intention that her property was to remain in her own family, with her own descendants. In the last part of the long sentence from which the court quotes in its opinion, she wrote:

"* * * it being my intention that [if both daughters died or married] the entire property is to be equally divided among my children and the descendants of any deceased child or children as hereinbefore specified."

The purport of that emphasis upon her intention seems to me indisputable. She had in mind, and attempted to make clear, that at the time when the division was appointed to take place, i. e., when the property was rid of its incumbent trust, her property should go to her own children and their descendants, and to no one else. Since that intention is clear, that ends the matter. The property must go as intended.

The court construes the early part of the provision it quotes. It correctly applies the rules of construction. In so far as that part of the provision is concerned, and in so far as legal rules of construction are concerned, the court, I agree, is correct. The error, it seems to me, is that the court ignores the plain expression of intent in the latter part of the quoted provision. It concludes upon construction that the property should be divided into five parts and then subdivided among the legatees, assignees, or heirs at law of each of the original children. Since four of those children had no descendants, this construction means that four of the five parts go to collaterals, in-laws, or strangers; the only direct descendant of the testatrix or of any of her children gets only one-fifth. This, to my mind, is a far cry from the clear intention of the testatrix, as expressed in the simple and emphatic restatement of her intent quoted above.

This preference of a testator to keep his property in those of his own blood is

a usual one. As the Court of Appeals of New York once remarked: "Of two doubtful interpretations, that favoring the blood of the testator rather than strangers will be adopted. Human nature usually so acts." [1]

The legal point I make is that a court does not apply to the language of a will rules designed to give meaning to meaningless expressions, if the court can ascertain from the will the actual intention of the testator, i. e., what the testator really meant to do with his property. Only if the actual intention of the testator cannot be ascertained from the four corners of the will does the law undertake to assign an artificial meaning and result to the words used. Lacking knowledge of actual intent, the courts ascribe by an abstruse system of legalisms a meaning to the will and thus, by a naked fiction, an intention to the testator.

In the learned authorities, such as the Restatement,[2] the phrase "judicially ascertained intent" is used, but that term means, first, what the testator had in mind, judicially ascertained from the language of the instrument. If his actual intent is clearly to be found in the will, the court so finds, and this is the judicially ascertained intent. The Restatement says, for example, "The dominant objective of construing a conveyance is to determine the disposition which the conveyor wanted to make."[3] The use of the phrase "judicially ascertained intent" to include a plain purpose indubitably expressed in simple words seems to me to create confusion. But the real meaning of the authorities nevertheless seems to me to be clear.

The cases cited by the court, Pyne v. Pyne,[4] Scott v. Powell,[5] and Episcopal Eye, Ear and Throat Hospital v. Goodwin,[6] do not suggest a different view. In Pyne v. Pyne, we carefully pointed out:

> "The basic, always controlling, rule in the construction of wills is the intent of the testator. If that intent can be discerned in the language of the will, read, of course, in the light of the surrounding circumstances, there is an end to the matter."[7]

We searched that will for "indicia of intent" and then went on to say: "If these indicia of intent within the will be not conclusive, we must ascertain the meaning which the law attaches to the provision in controversy."[8] We found that the available "indicia of intent" and the law's construction of the terms were the same. In Scott v. Powell we meticulously searched the whole will and considered its "scheme", and thus ascertained an "evident intent that the property should go to the testatrix's descendants so long as there were any."[9] In Episcopal Eye, Ear and Throat Hospital v. Goodwin, the problem which arose sixty-three years after the will had been written was obviously not contemplated by the testatrix, and so we laboriously applied the law's rules of construction. All three of those cases were correctly decided, in my judgment. None of them applies to the case at bar. In this latter the actual intent of the testatrix is clear, and we should not belabor the matter. Her intention is all there is to the case.

I would reverse.

1. In re Rooker's Will, 248 N.Y. 361, 162 N.E. 283 (1928).

2. 3 Property § 241 (1940).

3. Id., Comment c.

4. 81 U.S.App.D.C. 11, 154 F.2d 297 (D.C. Cir.1946).

5. 86 U.S.App.D.C. 277, 182 F.2d 75 (D.C. Cir.1950).

6. 107 U.S.App.D.C. 375, 278 F.2d 255 (D.C.Cir.1960).

7. 81 U.S.App.D.C. at page 14, 154 F.2d at page 300.

8. 81 U.S.App.D.C. at page 15, 154 F.2d at page 301.

9. 86 U.S.App.D.C. at page 283, 182 F.2d at page 81.